PRELIMINARY STATEMENT

Third-Party Defendant, SHAMBAUGH & SON, L.P. ("SHAMBAUGH") submits this memorandum of law, together with the accompanying Affidavit of Gregg Minkin, sworn to on January 28, 2008 (the "Minkin Affidavit"), and the Affidavit of Jeff Johns, sworn to on January 24, 2008 (the "Johns Affidavit"), in support of SHAMBAUGH's motion for an Order:

(1) directing that Indiana law should apply to this action;

(2) dismissing Defendant/Third-Party Plaintiff PERK UP, INC. s/h/a KARI-OUT CLUB, LLC, t/a KARI-OUT CO. ("PERK-UP") Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state any claims upon which relief can be granted;

(3) staying discovery pending the Court's decision on this motion; and

(4) granting SHAMBAUGH its costs, including attorney's fees, together with such other and further relief as to the Court may seem just and proper.

Plaintiff McCORMICK & CO., INC. ("McCORMICK") commenced this action against PERK-UP for fire damage and business interruption caused by PERK-UP's alleged negligent removal of equipment from McCORMICK's manufacturing plant located in South Bend, Indiana on October 18, 2006.

Defendant/Third-Party Plaintiff PERK-UP filed a Third-Party Complaint against SHAMBAUGH, the on-site general contractor of the facility, for common law and contractual indemnification, contribution and breach of contract.

1

As demonstrated herein, the Third-Party Complaint fails to state any actionable claims against SHAMBAUGH and should, therefore, be dismissed in its entirety.[1]

As an initial matter, Indiana law, not New York law, applies to this action because Indiana has a much more significant interest in this litigation. All relevant acts and events pertaining to this action occurred in Indiana. New York, on the other hand, has absolutely no connection to this litigation, other than the fortuitous fact that PERK UP has its principle place of business in New York. The expectation of the parties was, therefore, unquestionably that Indiana law would apply. Furthermore, the contract which PERK-UP claims was breach by SHAMBAUGH contains a choice of law provision requiring that Indiana law apply.

PERK-UP's contribution claim should unquestionably be dismissed because Indiana law prohibits contribution among joint tortfeasors.

PERK-UP's common law indemnification claim should similarly be dismissed because no legal relationship existed between PERK-UP and SHAMBAUGH; no contract existed between them; and PERK-UP admits that it was not SHAMBAUGH's subcontractor. Common law indemnification is also not available to PERK-UP because McCORMICK's claims against PERK-UP are based on its own active negligence in causing the fire. Under Indiana law, common law indemnification is not available to a party who has <u>any</u> fault. Since PERK-UP's liability is allegedly based on its own active negligence and not on any conduct by SHAMBAUGH, PERK-UP's common law indemnification claim should be dismissed in its entirety.

---

[1] While the Third-Party Complaint fails to state any actionable claims under either Indiana or New York law, we will limit our analysis to Indiana law, which, as explained herein, applies to this action.

PERK-UP's breach of contract and contractual indemnification claims are also clearly not actionable because no contract existed between PERK-UP and SHAMBAUGH, let alone a contract requiring SHAMBAUGH to indemnify PERK-UP.

Finally, PERK-UP's claim that it was an intended third-party beneficiary of the contract between SHAMBAUGH and McCORMICK is baseless and does not state a claim upon which relief can be granted. On its face, the contract between McCORMICK and SHAMBAUGH clearly was not intended for PERK-UP's benefit. On the contrary, the contract between McCORMICK and SHAMBAUGH makes no mention of PERK-UP and, in fact, PERK-UP had not even contracted with McCORMICK to purchase and remove equipment when the contract was executed. Furthermore, McCORMICK has never claimed that SHAMBAUGH breached its contractual obligations in any way. Instead, McCORMICK claims that all of its damages were caused solely as a result of PERK-UP's active negligence.

For the foregoing reasons, PERK-UP's Third-Party Complaint fails to state any claims upon which relief can be granted and should be dismissed in its entirety.

## STATEMENT OF FACTS[2]

A.  The Parties

Plaintiff McCORMICK is a Maryland corporation with its principal place of business in Sparks, Maryland. *See* Exhibit "A" at ¶ 4. McCORMICK is a global supplier of value-added flavor solutions and manufactures, markets, and distributes herbs, spices, seasonings, flavors and other food products to retail outlets, food service providers, and food processors. *See* Exhibit "A" at ¶ 4. Plaintiff owns a manufacturing and packaging facility in

---

[2] On a motion to dismiss, all well-pleaded factual allegations must be assumed to be true. *See, e.g., Advance Mktg. Group, Inc. v. Business Payment Sys., LLC*, 481 F. Supp. 2d 319, 322 (S.D.N.Y 2007). However, where, as here, the complaint contains allegations about a contract that are belied by the language of the contract itself, this Court may examine that contract to determine the truths of plaintiff's allegations. *See id.* With regard to the remainder of

South Bend, Indiana where all of the relevant events are alleged to have occurred. *See* Exhibit "A" at ¶ 7.

Defendant/Third-Party Plaintiff, PERK-UP, is a New York corporation with its principal place of business in White Plains, New York. *See* Exhibit "E" at ¶ Fifth. PERK-UP also does business as KARI-OUT CO. *See* Exhibit "E" at ¶ Fifth. PERK-UP is a manufacturer and marketer of food condiments. *See* Exhibit "A" at ¶ 5.

Third-Party Defendant SHAMBAUGH is, specifically, a Texas limited partnership with its principal place of business in Fort Wayne, Indiana. *See* Johns Affidavit at ¶ 4; Exhibit "B" at ¶ 4. SHAMBAUGH is a construction and engineering firm. *See* Exhibit "B" at ¶ 4.

B.   The Underlying Action

On or about August 14, 2006, McCORMICK commenced this action against PERK-UP in this Court based on diversity jurisdiction. *See* Exhibit "A" at ¶ 2. McCORMICK seeks to recover damages caused by a fire that occurred solely as a result of the active negligence of PERK-UP employees while removing production equipment from McCORMICK's manufacturing and packaging plant located in South Bend Indiana on October 18, 2006. *See* Exhibit "A" at ¶ 1. McCORMICK specifically claims that the fire was caused by PERK-UP's employees' improper use of a plasma torch to cut out the equipment and failed to have a fire extinguisher available during use of the plasma torch. *See* Exhibit "A" at ¶ 1. McCORMICK does not assert any claims against or allege any negligence by SHAMBAUGH. *See* Exhibit "A."

SHAMBAUGH was McCORMICK's on-site general contractor at the plant at the time of the fire. SHAMBAUGH's employee, Johnny Davis, advised PERK-UP of

---

the allegations, although they are assumed to be true for the purposes of this motion, SHAMBAUGH does not concede that they are, in fact, true.

McCORMICK's safety, hot work and fire policies prior to PERK-UP's removal of equipment. *See* Exhibit "A" at ¶ 9. Specifically, SHAMBAUGH instructed PERK-UP not to use a plasma torch to remove equipment. Exhibit "A" at ¶¶ 8, 9, 10. Only after the equipment was removed could PERK-UP use a plasma torch to cut the equipment into sections, but a fire watch must be present and an extinguisher on hand. *See* Exhibit "A" at ¶¶ 9, 10. PERK-UP agreed to follow these safety policies. Exhibit "A" at ¶ 10.

On October 8, 2006, PERK-UP allegedly ignored these instructions and used a plasma torch to cut through a stainless steel conduit to remove the equipment. *See* Exhibit "A" at ¶ 11. As a result, the plastic tubing contained inside the conduit caught fire. *See* Exhibit "A" at ¶ 11. PERK-UP did not have a fire extinguisher on hand. *See* Exhibit "A" at ¶ 12. PERK-UP obtained an extinguisher and attempted to put out the fire. *See* Exhibit "A" at ¶ 13. PERK-UP then departed for lunch without informing anyone at the McCORMICK plant that a fire had started, in contravention of McCORMICK policy. *See* Exhibit "A" at 13. The fire continued to burn causing additional damages.

McCORMICK commenced the underlying action against PERK-UP to recover for damages it incurred solely as a result of PERK-UP's negligence in causing the fire. McCORMICK does not assert any claims against or allege any negligence by SHAMBAUGH.

C.   The Third-Party Complaint

On or about November 26, 2007, PERK-UP filed a Third-Party Complaint against SHAMBAUGH for common law and contractual indemnification, contribution and breach of contract as a purported third-party beneficiary of SHAMBAUGH's contract with McCORMICK. *See* Exhibit "B".

The Third-Party Complaint alleges that SHAMBAUGH and McCORMICK entered into an agreement for SHAMBAUGH to provide general contracting and construction

5

safety services to McCORMICK at its Indiana Plant. *See* Exhibit "B" at ¶ 12. These alleged services included responsibility for implementing safety, hot work, fire policies and safety procedures propounded by McCORMICK at McCORMICK's plant. *See* Exhibit "B" at ¶ 13. PERK-UP claims that SHAMBAUGH improperly performed those duties.

For the reasons set forth below, the Court should dismiss the Third-Party Complaint in its entirety because it fails to state any claims upon which relief can be granted.

ARGUMENT

I.

INDIANA LAW APPLIES THIS ACTION BECAUSE
INDIANA HAS THE GREATEST INTEREST
IN THE LITIGATION

A.   A Conflict of Applicable Law Exists
     Between Indiana And New York

In a case in which federal jurisdiction is based upon diversity, a District Court must apply the law of the state in which it sits, including the choice of law rules. *See Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020 (1941). In New York, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws. *See Curley v. AMR Corp.*, 153 F. 3d 5, 12 (2d Cir. 1998).

In the instant matter, it is clear that a conflict exists between the law of Indiana and New York with regard to the contribution and indemnification claims alleged by PERK-UP in the Third-Party Complaint.

In Indiana, it is a well-settled rule of law that there can be no contribution among joint tortfeasors. *See Consolidated Rail Corp. v. Allied Corp.*, 882 F.2d 254, 257 (7th Cir. 1989); *Elcona Homes v. McMillan Bloedell, Ltd.,* 475 N.E.2d 713, 715 (Ind. App. 1985); *Mullen v. Cogdell*, 643 N.E.2d 390 (Ind. App. 1994). New York, however, provides for contribution

among joint tortfeasors. *See Orsini v. Kugel*, 9 F.3d 1041 (2d Cir. 1993). Accordingly, a conflict of law exists triggering the choice of law inquiry.

Indiana and New York law also conflict concerning PERK-UP's common-law indemnity claim. Under Indiana law, in the absence of an express contractual or statutory right to indemnity, a party may bring an action for indemnification <u>only</u> if he is without fault. *See Mullen v. Cogdell*, 643 N.E.2d 390, 400 (Ind. App. 1994). Furthermore, indemnity will be implied at common law only in favor of one whose liability to another is solely derivative or constructive and only against one whose wrongful act has caused such liability to be imposed. *See Indianapolis Power and Light Co. v. Snodgross*, 578 N.E.2d 669, 671 (Ind. 1991). Notably, Indiana has refused to accept <u>any</u> exceptions to this rule, instead reaffirming that where the party claiming indemnity is guilty of actual negligence, whether malfeasance, misfeasance or non-feasance, indemnity is not available. *See Mullen*, 643 N.E.2d 390.

New York, on the other hand, has carved out a small exception to the general rule that a party who participated in the wrongdoing cannot receive the benefit of common law indemnity, depending on the degree of wrongdoing. *See Durabla Mfg. Co. v. Goodyear Tire and Rubber Co.*, 992 F. Supp. 657 (S.D.N.Y. 1998); *Guzman v. Haven Plaza House Development Fund Co.*, 69 N.Y.2d 559, 509 N.E.2d 51, 516 N.Y.S.2d 451 (1987). "It is well-settled in New York that a *passive* tortfeasor whose liability is premised entirely upon the active wrongdoing of another may recover against the *active* tortfeasor on a claim of implied indemnity." *Allianz Insurance Co. v. Otero*, 353 F.Supp. 2d 415, 424 (S.D.N.Y. 2004) (emphasis added).

A conflict of law also exists as to PERK-UP's contractual indemnity claims. "Under New York law, contracts will not be construed to indemnify a person against his own active negligence unless such intention is expressed in unequivocal terms." *Williams v. J.P. Morgan & Co. Inc.*, 248 F.Supp. 2d 320, 325 (S.D.N.Y.).

Similarly, Indiana permits parties to an express contract to bind themselves to indemnity against future acts of negligence, but only where the contract clearly and unequivocally so provides. *See Indiana State Highway Commission v. Thomas*, 346 N.E.2d 252 (Ind. App. 1976). Significantly, however, Indiana statutory law prohibits contracts for <u>construction</u> from providing indemnification as to the sole negligence of one of the parties to the contract. *See* Ind. Code. § 26-2-5-2[3]; *id.* Accordingly, a conflict of law exists concerning the effect of any alleged contract of indemnification between PERK-UP and SHAMBAUGH.

    B.    Indiana Law Applies To The Action Because
<u>Indiana Has The Greatest Interest In The Litigation</u>

Under New York choice of law rules, the relevant analytical approach to choice of law issues is the "interest analysis." Pursuant to the interest analysis, "the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Miller v. Miller*, 237 N.E.2d 877, 879 (N.Y. 1968); *Neumeier v. Kuehner*, 286 N.E.2d 454, 457 (N.Y. 1972).

Indiana has, by far, the most significant interests in this litigation. Every aspect of both McCORMICK and PERK-UP's claims has a significant relationship to, and arise in, Indiana. For example, the McCORMICK plant where the fire and damage occurred is located in Indiana. In addition, the alleged contracts were negotiated and to be performed in Indiana. *See* Johns Affidavit ¶¶ 6, 8. The claims have absolutely nothing to do with New York, other than the

---

[3] All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract except those pertaining to highway contracts, which purport to indemnify the promisee against liability for:
(1) death or bodily injury to persons;
(2) injury to property;
(3) design defects; or
(4) any other loss, damage or expense arising under either (1), (2) or (3);
from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, are against public policy and are void and unenforceable. Ind. Code. § 26-2-5-2.

fact that PERK-UP happens to be a New York corporation and has its principle place of business there.

While New York has different choice of law rules governing contribution and common law indemnification claims than governing contract claims, it is clear that Indiana law applies to all of the claims asserted in the third-party complaint.

1. Loss Allocating Rules: Contribution and Common-Law Indemnity

The choice of law principles relating to loss allocating rules, such as contribution and common law indemnification, were articulated by the Court of Appeals in *Neumeier v. Kuehner*, 31 N.Y2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972); *see also Cooney v. Osgood Mach., Inc.* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (N.Y. 1993). The *Neumeier* Court provided the three following guidelines: (1) Where the parties share a common domicile, that law should control; (2) Where the parties are domiciled in different states and the local law favors the domiciliary of each respective state, the place of injury should control; and (3) where the parties are domiciled in different states, the law of the place of injury should apply unless "displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." 31 N.Y2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454. (citations omitted); *see also Heisler v. Toyota Motor Credit Corp.*, 881 F.Supp. 128 (S.D.N.Y. 1995); *Esco Fasteners, Co., Inc. v. Korea Hinomoto Co., Ltd.*, 928 F.Supp. 252 (E.D.N.Y. 1996).

With regard to PERK-UP's claims for common-law indemnification and contribution, New York's choice of law analysis strongly favors the application of Indiana law. According to *Neumeier*, 31 N.Y2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454, where loss allocating rules are at issue and where parties are domiciled in different states, <u>the law of the place of injury should apply</u>. *See* 31 N.Y2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (emphasis added); *see also*

*Heisler*, 884 F.Supp. 128 (applying the law of the state of the injury to a loss allocating rule); *Esco Fasteners, Co., Inc.*, 928 F.Supp. 252 (applying the law of the state of the injury to indemnity and contribution claims); *Playwell Toy, Inc. v. Bureau Veritas Consumer Products Services*, 2007 WL 2892031 (W.D.N.Y. Sept. 28, 2997) (applying the law of the state of the injury to indemnity and contribution claims).

In this case, all of the parties in this matter are domiciled in different states: McCORMICK's principle place of business is in Maryland; PERK-UP's is New York; and SHAMBAUGH's, Indiana. *See* Exhibit "A" at 4; Exhibit "E" at Fifth; Exhibit "B" at ¶ 4; Johns Affidavit at ¶ 4. Accordingly, the place of the injury, which is Indiana, is the determining factor. *See Neumeier*, 31 N.Y2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454.

In fact, Indiana is the only State connecting the parties in this matter. *See* Exhibit "A" at ¶ 1. The *Cooney* Court recognized that "the situs of the tort is appropriate as a 'tie breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way." *See* 81 N.Y.2d 66, 74, 595 N.Y.S.2d 919, 923, 612 N.E.2d 277, 281. Based on the facts and circumstances in this case, there is no way that SHAMBAUGH would know or have reason to know that it was somehow availing itself to the laws of New York, particularly since all of the relevant events in this case occurred in Indiana. For these reasons, Indiana clearly has a more significant interest in this litigation than New York.

The only tie that New York has to this litigation is that it serves as the forum state and where one of the parties is domiciled. *See* Exhibit "E" at "Fifth". Courts have consistently held, however, that the site of the injury takes precedence over these minimal connections. *See Heisler*, 884 F.Supp. 128 (applying the law of the state of the injury to a loss allocating rule despite the fact that it was the non-forum state and one of the parties was domiciled there); *Esco Fasteners, Co., Inc.*, 928 F.Supp. 252 (applying the law of the state of the injury to indemnity

and contribution claims despite the fact that it was the non-forum state and one of the parties was domiciled there); *Playwell Toy, Inc.*, 2007 WL 2892031 (applying the law of the state of the injury to indemnity and contribution claims despite being the non-forum state).

The rationale is that "the locus [of the injury] is a neutral factor, rebutting an inference that the forum state is merely protecting its own domiciliary or favoring its own law." *Cooney*, 81 N.Y.2d 66, 74, 595 N.Y.S.2d 919, 924, 612 N.E.2d 277, 282. Furthermore, applying the law of the state of the injury protects the reasonable expectations of the parties. *See* id. 81 N.Y.2d 66, 77, 595 N.Y.S.2d 919, 925, 612 N.E.2d 277, 283. Because McCORMICK's plant was located in Indiana, because the alleged contracts at issue were to be performed in Indiana, and because all of the parties performed and acted solely in Indiana with regard to the salient facts of this lawsuit, none of the parties could reasonably have anticipated that the law of New York would have any relevance to this case. *See* ¶ 1 to Plaintiff's Complaint at Exhibit "A"; Johns Affidavit at ¶¶ 6, 8. Accordingly, applying Indiana law will protect the parties' reasonable expectations.

Nor does the application of Indiana law to the contribution claims violate New York public policy. In *Cooney*, the Court applied foreign substantive law which denied a New York domiciliary's right to contribution although New York law would have made the remedy available. *Cooney,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277. The Court recognized that "contribution is not a deeply rooted tradition of the common weal, having been introduced into our law only relatively recently." *Id.* at 79, 927, 285. "Moreover, the right of contribution is not invariably guaranteed." *Id.* (recognizing that "the public policy exception should be reserved for those foreign laws that are truly obnoxious"). Because Indiana law concerning contribution is not "truly obnoxious," the Court should apply Indiana law. *See id.*

For the foregoing reasons, this Court should apply Indiana law to PERK-UP's common-law indemnification and contribution claims.

2. Contractual Claims

Indiana law similarly applies to PERK-UP's contractual indemnification and breach of contract claims. While the *Neumeier* analysis has been applied to contribution and common law indemnity rules, contractual indemnity provisions rest on different footing. *See Allianz Insurance Comp. v. Otero*, 353 F.Supp. 2d 415 (S.D.N.Y. 2004); *see also Casey v. Ryder Truck Rental, Inc., et al.*, 2005 WL 1150228 (E.D.N.Y. May 16, 2005). Instead, New York Courts utilize a "center of gravity" or "grouping of contacts" approach to contractual indemnity claims. *See Babcock v. Jackson,* 12 N.Y.2d 473, 191 N.E.2d 279 (1963). Among other things, Courts consider the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. *See Lazard Freres & Co. v. Protective Life Ins. Co,* 108 F.3d 1531 (2d Cir. 1997). However, the place of performance and contracting is given the highest importance. *Id.*

Applying the center of gravity analysis to this case demonstrates that Indiana, and not New York law, should apply to PERK-UP's breach of contract and contractual indemnification claims.

PERK-UP alleges in its Third-Party Complaint that SHAMBAUGH and McCORMICK contracted to provide general contracting and construction services at the McCORMICK plant located in Indiana. *See* Exhibit "B" at ¶ 12. Assuming, *arguendo* that PERK-UP's contractual claims can be based on this contract, a fact that SHAMBAUGH disputes, the choice of law analysis favors the application of Indiana law. Indiana is location of the subject matter (the plant); and where the alleged contract was negotiated, executed and to be performed (one of the most significant *Babcock* factors). *See Lazard Freres & Co,* 108 F.3d

1531; *see also Casey,* 2005 WL 1150228; Exhibit "A" at ¶ 12; Johns Affidavit ¶¶ 6, 8. In addition, the domiciles of the parties are all diverse making this a neutral factor. Indiana, and not New York, clearly has the more significant interest.

Moreover, the contract between SHAMBAUGH and McCORMICK which PERK-UP claims was breached, contained a <u>choice of law</u> provision providing for the application of Indiana law. *See* Exhibit "F" *at* ¶ 20.8. Because this provision does not violate public policy and because Indiana has sufficient contacts with this cause of action, the Court should enforce the choice of law of provision and apply Indiana law. *See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549. (2d Cir. 2000).

In addition, under Indiana law, provisions in contracts for improvement of real estate that make the contract subject to the laws of another state are void as against public policy. *See* Ind. Code § 32-28-3-17. As a result, when the parties in this matter entered into contract, they had every reason to believe that any potential contract issues would be subject to the laws of Indiana. *See id*.

Since this litigation has a significantly stronger relationship to Indiana than New York and because the contract between SHAMBAUGH and McCORMICK contains a choice of law provision which provides that Indiana law applies, the parties undoubtedly expected that Indiana law would apply. Indiana law should, therefore, apply to PERK-UP's contractual indemnification and breach of contract claims as well.

II.

## THE THIRD-PARTY COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE ANY CLAIMS UPON WHICH RELIEF CAN BE GRANTED

A.  Standard Of Review On
    A Motion To Dismiss

On a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), all factual allegations in the complaint must be taken as true and construed favorably to Plaintiff. *LaBounty v. Adler*, 933 F.2d. 121 (2d Cir. 1991); *see also Advance Mktg. Group, Inc. v. Business Payment Sys., LLC*, 481 F. Supp. 2d 319, 322 (S.D.N.Y. 2007). However, the Court does not accept as true conclusory allegations which are unsupported by factual allegations. *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 528 (S.D.N.Y. 1998); *see Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988). Such a motion should be granted where it appears beyond doubt that Plaintiff cannot prove any set of facts that would entitle him to the relief requested. *See Velomonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). In other words, "a plaintiff's allegations, accepted as true, must be sufficient to establish liability." *Amron v. Morgan Stanley Investment Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006).

"For purposes of a motion to dismiss, the Second Circuit has deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the Plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *The Jordan (Bermuda) Investment v. Hunter Green Investments LTD.*, 154 F.Supp.2d 682 (S.D.N.Y. 2001) (citations omitted); *see International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Furthermore, where a complaint contains allegations about a contract that are belied by the language of the contract itself, this Court may examine that contract to determine the truth of the (Third-Party) Plaintiffs' allegations. *See Advance Mktg. Group, Inc.* 481 F. Supp. 2d 319.

PERK-UP's Third-Party Complaint refers to the SHAMBAUGH-McCORMICK contract[4] as providing a basis for PERK-UP's contractual indemnification and breach of contract claims. We, therefore, annex a copy of the SHAMBAUGH-McMORMICK contract to our motion to rebut PERK-UP's allegations. *See* id.

B. Contribution Among Joint Tortfeasors
   Is Prohibited In Indiana

It is a well-settled rule of law in Indiana that there can be no contribution among joint tortfeasors. *Consolidated Rail Corp. v. Allied Corp.*, 882 F.2d 254, 257 (7th Cir. 1989); *Elcona Homes v. McMillan Bloedell, Ltd.*, 475 N.E.2d 713, 715 (Ind. App. 1985); *Mullen v. Cogdell*, 643 N.E.2d 390 (Ind. App. 1994).

PERK-UP's Third-Party Complaint seeks contribution from SHAMBAUGH as an alleged joint tortfeasor, claiming that, in the event that PERK-UP is found liable for the fire damages at the McCORMICK plant, such damages were caused in whole, or in part, by the negligence of SHAMBAUGH. *See* Exhibit "B" at ¶¶ 20, 21. Indiana law, however, clearly forbids such a contribution claim. The Court should therefore dismiss PERK-UP contribution claim in its entirety.

The decision in *Consolidated Rail* is directly on point. *See* 882 F.2d 254. In *Consolidated Rail*, the Circuit Court affirmed dismissal of plaintiff's complaint which sought contribution against Defendants, because Indiana does not recognize actions for contribution among joint tortfeasors. *See id.* (applying Indiana substantive law); *see also Boys and Girls Clubs of Chicago v. United States of America*, 885 F.Supp. 978 (N.D. Ill. 1995) (applying Indiana law and granting Defendant's motion to dismiss where action was one for contribution among joint tortfeasors); *Sprigler v. Osnabrucker MettallWerke*, 761 F.Supp. 86 (S.D. Ind. 1991)

---

[4] *See* attached Exhibit "F."

(granting Third-Party Defendants' summary judgment motion against Third-Party Plaintiff for several reasons including Indiana law's prohibition of contribution among joint tortfeasors).

"Indiana's policy of no contribution among joint tortfeasors rests on the belief that its tort compensation scheme is best served by imposing the entire risk of loss on the party that is found liable to Plaintiff." *Shields v. Bethlehem Steel Corporation,* 810 F.2d 397 (3d Cir. 1987) (applying Indiana law). "A plaintiff has the option of proceeding against only one of the joint tortfeasors or after obtaining judgment against all, to levy execution against only one of several tortfeasors." *Id.* at 400. (citing *Barker v. Cole*, 396 N.E.2d 964, 971 (Ind. App. 1979)). Furthermore, where the Plaintiff has failed to name one of the alleged tortfeasors, Indiana law provides a mechanism for apportioning fault as the named Defendant may assert as a defense that the claimant's damages were caused in full or in part by a non-party. *See Four Winds, LLC v. Am. Exp. Tax and Consulting Services, Inc.,* 2006 WL 2982108 (N.D. Ind. 2006). Needless to say, the rationale underlying Indiana's ban on contribution among joint tortfeasors is clear and applicable to the case at bar.

Because Indiana law applies to this case, including its well-developed policy barring contribution among joint tortfeasors, PERK-UP's contribution claim should be dismissed in its entirety.

C.     Common-Law Indemnity Is Not Available Because PERK-UP Was Negligent And <u>Did Not Have A Special Relationship With SHAMBAUGH</u>

Under Indiana law, common-law indemnity is only available if a legal relationship exists between the parties, such as employee-employer or principal-agent. *See McLish v. Niagara Machine & Tool Works,* 266 F.Supp. 987, 989 (S.D.Ind.1967). In this case, no such relationship existed between SHAMBAUGH and PERK-UP. *See id.* SHAMBAUGH was not a party to PERK-UP's contract to remove of equipment from McCORMICK's plant;

PERK-UP was not SHAMBAUGH's subcontractor; and SHAMBAUGH did not supervise PERK-UP's work. *See* Exhibit "A" at ¶ 8. Accordingly, PERK-UP has failed to state a claim for common-law indemnity.

Furthermore, under Indiana law, a party may only bring a common-law indemnification claim if he is *without fault*. *See Mullen*, 643 N.E.2d *at* 400. In this case, McCORMICK's claims against PERK-UP are based on PERK-UP's alleged active negligence in using a plasma torch and in failing to have an extinguisher on hand despite instructions otherwise. McCORMICK's claims against PERK-UP are <u>not</u> based upon any alleged conduct by SHAMBAUGH. *See* Exhibit "A" at ¶¶ 1, 8-11. Accordingly, PERK-UP's liability is based on its own alleged fault and, therefore, its common law indemnity claim necessarily fails.

Since no legal relationship existed between PERK-UP and SHAMBAUGH and because the claims against PERK-UP are based on PERK-UP's own active negligence, PERK-UP's common law indemnification claims should be dismissed in their entirety.

D. PERK-UP's Contractual Indemnification Claim Should Be Dismissed Because Of No Contractual Indemnification Obligation

PERK-UP also fails to state an actionable claim for contractual indemnity. PERK-UP fails to allege that a contract existed between PERK-UP and SHAMBAUGH or that *any* contract provision, express or otherwise, exists whereby SHAMBAUGH agreed to indemnify PERK-UP. In fact, PERK-UP cannot identify *any* contract between PERK-UP and SHAMBAUGH, simply because none existed. As a result, PERK-UP's contractual indemnification claim should be dismissed in its entirety. *See Indiana State Highway Commission v. Thomas,* 346 N.E.2d 252 (Ind. App. 1976) (upholding contract provisions that indemnify a party for its own negligence only where such provisions are clear and unequivocal);

17

*see also Fort Wayne Cablevision v. Indiana and Michigan Electric Company*, 443 N.E.2d 863 (Ind. App. 1983).

Furthermore, Indiana law will not enforce as against public policy indemnification provisions in construction-related contracts which provide indemnification for the sole negligence of one of the parties. *See* Ind. Code. § 26-2-5-2. The claims asserted by McCORMICK against PERK-UP are based exclusively on PERK-UP's active negligence in using a plasma torch to cut out equipment and in not having a fire extinguisher available during such work. Since the claims against PERK-UP are based on its own negligence, PERK-UP's contractual indemnification claim against SHAMBAUGH should be dismissed on this ground as well. *See id.*

Based on the above, PERK-UP's contractual indemnification claim should be dismissed in its entirety.

E.    PERK-UP's Third-Party Beneficiary Claim Should Be Dismissed Because The SHAMBAUGH-McCORMICK Contract Was Not Intended To Benefit PERK-UP

PERK-UP's breach of contract claim based on PERK-UP being an intended third-party beneficiary of the contract between McCORMICK and SHAMBAUGH is likewise baseless. Under Indiana law, PERK-UP must demonstrate from the four corners of the contract between SHAMBAUGH and McCORMICK that the parties intended the contract to be for PERK-UP's benefit. *See Centennial Mortgage, Inc. v. Mortgage Inc. v. Blumenfeld*, 745 N.E.2d 268 (Ind. App. 2001); O*EC Diasonics, Inc. v. Major*, 674 N.E.2d 1312 (Ind. 1996); *see also Debary v. Harrah's Operating Comp.*, 465 F. Supp. 2d 250 (S.D.N.Y. 2006); *Subaru Distribs. Corp. v. Subaru of America*, 425 F.3d 119 (2d Cir. 2005).

18

The contract between SHAMBAUGH and McCORMICK, however, fails to make any mention of being for the benefit of any third parties, let alone any reference to PERK-UP. *See* Exhibit "F." On the contrary, the contract provides that SHAMBAUGH was to provide engineering and construction services for the purpose of expanding McCORMICK's ketchup, jelly, and salad dressing production activities and cold storage capacity at the McCORMICK Plant. *See* Exhibit "F" at ¶ 2.2 (p. 2). The contract was therefore clearly, on its face, intended for McCORMICK's benefit and not for the benefit of third parties.

The contract also had nothing to do with PERK-UP's removal of equipment from the McCORMICK plant. In fact, the contract was executed prior to PERK-UP even having contracted with McCORMICK to purchase and remove equipment from the plant.

Accordingly, the Third-Party Complaint fails to state an actionable claim based on PERK-UP being a third-party beneficiary of the McCORMICK-SHAMBAUGH contract. PERK-UP's third-party beneficiary claim should, therefore, be dismissed in its entirety.

III.

THIRD-PARTY DISCOVERY SHOULD BE STAYED
PENDING A DETERMINATION OF THIS MOTION

As demonstrated above, the third-party complaint fails to state any claims against SHAMBAUGH upon which relief can be granted. Instead, PERK-UP asserts contract claims even though no contract exists; third-party beneficiary claims even though PERK-UP clearly was not an intended third-party beneficiary of the contract between McCORMICK and SHAMBAUGH; and contribution claims even though applicable Indiana law does not recognize such claims.

In order to avoid the unnecessary time and expense of engaging in discovery with regard to these claims, we respectfully request that the Court stay discovery with regard to the third-party action pending a decision by the Court on this motion.

## CONCLUSION

FOR THE FOREGOING REASONS, the instant motion should be granted and an Order entered:

(1) directing that Indiana law should apply to this action;

(2) dismissing PERK-UP's Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state any claims upon which relief can be granted;

(3) staying discovery pending the Court's decision on this motion; and

(4) granting SHAMBAUGH its costs, including attorney's fees, together with such other and further relief as to the Court may seem just and proper.

Date: New York, New York
      January 28, 2008

Respectfully submitted,

LONDON FISCHER LLP

By: _____
Gregg Minkin (GM 2356)
Attorneys for Third-Party Defendant
SHAMBAUGH & SON, LP
59 Maiden Lane
New York, New York 10038
(212) 972-1000

*Of Counsel:*
Gregg Minkin
Miriam Schneider

K:\470\160\Motions\Memo of Law.doc